RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0133P (6th Cir.)
File Name: 03a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DEMETRIUS MCCLENDON,
  *Petitioner-Appellant,*

  *v.*

TERRY SHERMAN, Warden,
  *Respondent-Appellee.*

No. 01-2608

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 00-40407—Paul V. Gadola, District Judge.

Argued: January 28, 2003

Decided and Filed: May 7, 2003

Before: GUY and MOORE, Circuit Judges; BECKWITH,
District Judge.[*]

_____

## COUNSEL

**ARGUED:** Craig A. Daly, Detroit, Michigan, for Appellant.
Raina I. Korbakis, STATE OF MICHIGAN, DEPARTMENT
OF ATTORNEY GENERAL, HABEAS CORPUS

_____

[*] The Honorable Sandra S. Beckwith, United States District Judge for
the Southern District of Ohio, sitting by designation.

---

DIVISION, Lansing, Michigan, for Appellee. **ON BRIEF:**
Craig A. Daly, Detroit, Michigan, for Appellant. Raina I.
Korbakis, STATE OF MICHIGAN, DEPARTMENT OF
ATTORNEY GENERAL, HABEAS CORPUS DIVISION,
Lansing, Michigan, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Petitioner
Demetrius McClendon appeals from the district court's grant
of summary judgment to the Respondent, arguing that the
district court incorrectly determined that McClendon's habeas
corpus petition was filed outside the statute of limitations
provided in 28 U.S.C. § 2244(d)(1). McClendon argues that
the district court incorrectly calculated his limitation period as
having begun upon the conclusion of direct review of his
conviction, rather than from the denial of his state court
Motion for Relief from Judgment, and that he was entitled to
equitable tolling of the statute of limitations. Because the
statute of limitations began to run upon the conclusion of his
direct appeal, and because McClendon has not demonstrated
that he is entitled to equitable tolling, we **AFFIRM** the
district court's decision.

## I. BACKGROUND

In November of 1991, McClendon was convicted by a jury
on two counts of possession with intent to deliver more than
650 grams of cocaine. He was sentenced to two consecutive
terms of life in prison. The Michigan Supreme Court finally
denied McClendon's direct appeal on August 28, 1995.

On April 23, 1997, McClendon filed a Motion for Relief
from Judgment in the state trial court, arguing, among other
things, that he had been denied effective assistance of counsel
on his direct appeal. That motion for relief was denied, and
the Michigan Supreme Court finally denied McClendon's

application for leave to appeal in those proceedings on November 29, 1999.

McClendon filed a habeas corpus petition in federal court on November 28, 2000, almost — but not quite — a year after his state court Motion for Relief from Judgment was ultimately denied. The district court granted the Warden's motion for summary judgment, ruling that the petition was not filed within the one-year statute of limitations provided for in 28 U.S.C. § 2244(d)(1). The court reasoned that the statute of limitations began to run on April 24, 1996, and that when McClendon filed his Motion for Relief from Judgment on April 23, 1997, the limitation period was tolled with one day remaining. The clock began to run again when the Michigan Supreme Court finally denied McClendon leave to appeal, and the limitation period expired on December 1, 1999. The district court rejected McClendon's argument that he was entitled to equitable tolling, because McClendon's statements in his affidavit that "[w]hen the ADEPA [sic] in April 23, 1996 was enacted I was not aware of the one (1) year statute of limitation," and that "I was not aware and had no notice that the one (1) year statute would run from April 23, 1996 for inmates whose convictions and appeal as of right had been completed before the date," Joint Appendix ("J.A.") at 120-21, were conclusory, and because he offered no explanation for his ignorance.

McClendon timely appealed, and the district court granted a certificate of appealability to determine whether McClendon's petition should be barred as untimely. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253. We generally review a district court's disposition of a habeas corpus petition de novo. *See Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001). A district court's decision not to apply equitable tolling is reviewed de novo when the facts are not disputed "and the district court determined as a matter of law that there were no grounds that would justify equitable tolling." *Dunlap v. United States*, 250 F.3d 1001, 1007-08 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001).

## II. ANALYSIS

This case requires us to determine whether Demetrius McClendon's delay in filing his petition for habeas corpus will prevent him from obtaining a federal forum to challenge the two life-sentences he received for his drug offense. According to 28 U.S.C. § 2244(d)(1), state prisoners have a one-year period in which they may file a petition for habeas corpus. Because that statute of limitations is not jurisdictional, however, state prisoners who fail to file timely petitions may still file federal habeas corpus petitions if the prisoners can show that they are entitled to an equitable tolling of the statute of limitations. *Dunlap*, 250 F.3d at 1007. McClendon neither filed within the statutory limitation period nor showed that he was entitled to equitable tolling, so the district court correctly granted summary judgment to the Respondent.

### A. The Statute of Limitations

The principal question in determining whether McClendon complied with the statutory limitation period is when McClendon's statute began to run. Section 2244(d)(1)(A) provides that, for purposes of this case, the one-year period of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). In *Austin v. Mitchell*, 200 F.3d 391 (6th Cir. 1999), *cert. denied*, 530 U.S. 1210 (2000), we held that prisoners whose convictions became final before the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA") were given a one-year grace period in which they could file their petitions, with the grace period beginning April 24, 1996. *Id.* at 393.

McClendon's conviction became final on August 28, 1995, and his statute of limitations thus began to run on April 24, 1996. In *Payton v. Brigano*, 256 F.3d 405 (6th Cir. 2001), *cert. denied*, 534 U.S. 1135 (2002), we held that a conviction becomes final for § 2244(d) purposes when direct review concludes, not when the petitioner has exhausted all state

remedies. *Id.* at 408. Section 2244 explicitly distinguishes between the conclusion of direct review, after which the limitation period begins to run, 28 U.S.C. § 2244(d)(1)(A), and post-conviction remedies, during which the limitation period is merely tolled, *id.* § 2244(d)(2). "The plain language of the statute indicates that an application for state post conviction or other collateral relief does not serve to delay the date on which a judgment becomes final. Rather, such limitations merely toll the running of the statute of limitations." *Payton*, 256 F.3d at 408 (quotation omitted). Here, McClendon's direct review ended on August 28, 1995, when the Michigan Supreme Court refused to reconsider its decision denying McClendon leave to appeal his conviction. Under the one-year grace period of *Austin*, McClendon's statute of limitations began to run on April 24, 1996, the date on which AEDPA became effective. *Austin*, 200 F.3d at 393.

We reject McClendon's contention that whenever a prisoner raises an allegation in his state post-conviction proceedings that he was denied the effective assistance of counsel on direct appeal, his conviction does not become final until those state post-conviction proceedings have ended. If McClendon were correct that ineffective assistance of appellate counsel claims are necessarily part of the direct review process, his conviction would not have become final until November 29, 1999, when his Motion for Relief from Judgment was finally denied, and his federal petition would have been timely when he filed it on November 28, 2000. Although McClendon may be correct that it is practically impossible to raise an ineffective assistance of appellate counsel claim during the actual direct appeal, that difficulty does not require, as McClendon suggests, that all ineffective assistance of appellate counsel challenges be treated as direct appeals. McClendon draws this proposition from *Payton v. Brigano*, 256 F.3d at 409 n.4, and *White v. Schotten*, 201 F.3d 743 (6th Cir.), *cert. denied*, 531 U.S. 940 (2000), in which we treated Ohio prisoners' ineffective assistance of appellate counsel claims as part of the direct review process.

*Payton* and *White* do not, however, support the general proposition that when a prisoner raises in state post-conviction proceedings a claim of ineffective assistance of appellate counsel, the prisoner's conviction is not considered final until those post-conviction proceedings conclude. Even if the principles of the *Payton* and *White* line were not limited to Ohio cases by a unique aspect of Ohio law that forces us to treat ineffective assistance of counsel claims as part of the direct review process, *see White*, 201 F.3d at 752-53 (citing *State v. Murnahan*, 584 N.E.2d 1204, 1208 (Ohio 1992), which rules that ineffective assistance of counsel claims cannot be raised in state post-conviction proceedings), those cases make clear that upon the filing of an ineffective assistance claim in state court, the statute of limitations is not restarted, but merely tolled. *See Bronaugh v. Ohio*, 235 F.3d 280, 286 (6th Cir. 2001); *see also Isham v. Randle*, 226 F.3d 691, 692-93, 694 (6th Cir. 2000) (treating Ohio prisoner's state ineffective assistance of appellate counsel challenge as tolling, though not restarting, the statute of limitations), *cert. denied*, 531 U.S. 1201 (2001). The conviction is still considered final at the close of the initial direct appellate proceedings. If the rule were otherwise, such that a subsequent motion could constitute part of the direct appeal and thus restart the limitation period, the rule "would severely undercut Congress'[s] intent in enacting the AEDPA by greatly extending the time in which a petitioner may properly bring a . . . challenge." *Johnson v. United States*, 246 F.3d 655, 659 (6th Cir. 2001) (refusing to allow § 2255 petitioner to restart the limitation period simply by filing a Federal Rule of Criminal Procedure 33 motion for a new trial).

Thus McClendon's conviction became final on August 28, 1995, and the one-year statute of limitations began to run on April 24, 1996. The statute ran for 364 days before McClendon filed a Motion for Relief from Judgment on April 23, 1997. The statute was tolled while this application for state post-conviction relief was pending. 28 U.S.C. § 2244(d)(2). The limitation period began to run again the day after McClendon was denied state post-conviction relief on November 29, 1999, and on December 1, 1999, the

limitation period reached its three-hundred-sixty-fifth day. Because McClendon did not file his federal habeas petition until November 28, 2000, he did not comply with the statutory limitation period unless that period was equitably tolled between December 1, 1999, and November 28, 2000.

**B. Equitable Tolling**

The petitioner bears the burden of demonstrating that he is entitled to equitable tolling. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). In analyzing whether a habeas petitioner should be entitled to equitable tolling, we look at the factors laid out in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). *See Dunlap*, 250 F.3d at 1008-09 (adopting *Andrews* factors in habeas context). Under *Andrews*, we consider "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews*, 851 F.2d at 151.

McClendon argues that the combination of his lack of notice of the April 24, 1997 deadline, his diligent filing of his habeas petition after his state proceedings had completed, and the lack of prejudice to the Warden warrant equitable tolling of the statute of limitations. With respect to McClendon's alleged lack of notice, as McClendon points out, the April 24, 1997 deadline was not formally set until after the limitation period had expired.

Assuming for purposes of summary judgment that McClendon, who initiated his state post-conviction proceedings on April 23, 1997, lacked actual notice of the April 24, 1997 deadline, he was not diligent in pursuing relief. McClendon's state court post-conviction proceedings concluded on November 29, 1999. Even if McClendon believed on that day — erroneously, as we hold, *supra* — that his one-year limitation period under § 2244(d)(1) was just beginning to run, his confusion on that point should have cleared a month later, when we decided the case that he now points to as establishing the April 24, 1997 deadline, *Austin*

*v. Mitchell*. Once *Austin* was decided and it became clear that the statute began running on April 24, 1996, McClendon offers no reason for the eleven months he waited before filing his federal habeas petition. Moreover, even in pointing to *Austin*, McClendon gives himself too much license: we actually announced the one-year grace period on August 5, 1999, in *Brown v. O'Dea*, 187 F.3d 572, 577 (6th Cir. 1999), *vacated on other grounds*, 530 U.S. 1257 (2000). McClendon thus could have realized his miscalculation while there was still time to correct it; in the nearly four months between the *Brown* decision and the final disposition of his Motion for Relief from Judgment, McClendon — who was represented by counsel — could have realized that his limitation period had nearly run and could have begun preparing to file the federal habeas petition within a reasonably quick time after the state proceedings concluded. Although it might have been nearly impossible to file the federal petition within the one day McClendon had remaining in his statutory limitation period, a reasonably diligent effort to file within a reasonably quick time might have entitled McClendon to equitable tolling. Because McClendon points to no diligent effort, and because his eleven-month delay — or, if we count from *Brown*, his fifteen-month delay — was not reasonable given these circumstances, no equitable tolling is available.

Comparison with two previous cases supports our conclusion. In *Miller v. Collins*, 305 F.3d 491 (6th Cir. 2002), we found equitable tolling appropriate for a petitioner who claimed that he lacked notice of the relevant deadline and acted diligently in his pursuit. There, the petitioner argued that he had never received a copy of a state court decision, and thus did not know that it was time for him to proceed to the next stage in his proceedings. *Id.* at 495-96. The record supported his claim that he lacked knowledge, as he had filed a motion in the state court asking it to proceed to judgment while he thought, erroneously, that his case was still pending. *Id.* Moreover, once the state court informed the petitioner that it had already ruled, the petitioner filed at the next stage within three weeks. *Id.* We found his lack of notice and his diligence sufficient to merit equitable tolling.

In contrast, and in a case more like that at issue here, the court denied equitable tolling in *Dunlap v. United States*. Although *Dunlap* differs from this case in that the petitioner there admitted to having notice of the relevant deadline, 250 F.3d at 1010, the petitioner there was denied the benefits of equitable tolling despite greater diligence. The petitioner in *Dunlap* missed his deadline by two months and, as the court there noted, "offer[ed] no explanation for this delay." *Id.* Here, although McClendon suggests that his lack of notice caused his delay, the lack of notice does not justify waiting eleven months after *Austin* or almost fifteen months after *Brown*.

### III. CONCLUSION

Because McClendon's conviction became final upon the conclusion of his direct appeal, his statute of limitations began to run on April 24, 1996, and expired on December 1, 1999. Because McClendon did not act diligently in filing his federal habeas corpus petition once he became aware of the deadline, he is not entitled to equitable tolling of the limitation period. We therefore **AFFIRM** the district court's grant of summary judgment to the Respondent.